<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPEEDWELL, LLC, SPEEDWELL ASSOCIATES NO. 1, LP, AND SPEEDWELL ASSOCIATES NO. 4, LP,<br><br>Plaintiffs,<br><br>v.<br><br>TOWN OF MORRISTOWN, *et al.*,<br><br>Defendants. | Case No. 21cv18796 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

This suit concerns a contractual dispute arising from a multi-phase plan to redevelop certain real property in Morristown, New Jersey ("Area in Need of Redevelopment"). Plaintiffs, who are developers, bring this suit against the Town of Morristown ("Town"), Town employees and/or affiliates, and a private developer following a property redevelopment dispute. Plaintiffs allege a series of claims, including, *inter alia*, breach of contract claims and constitutional claims. Defendants separately move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or 12(b)(1). The Court decides Defendants' motions without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R.78(b). For the reasons set forth below, Defendants' motions will be **GRANTED** and any remaining state law claims will be **REMANDED** to state court.

I.    **BACKGROUND**[1]

  A. **Parties**

Plaintiffs are developers, who own certain property in Morristown, New Jersey.  D.E. 1, Ex. A ("Compl.") ¶¶ 24-26.  Plaintiffs have the same principal place of business located in Morristown, New Jersey.  *Id.*  Speedwell, LLC holds title to Block 5803, Lots 6, 1.0, and 1.03 on the Tax Map of the Town of Morristown.  *Id.* ¶ 24.  Speedwell Associates No. 1, LP holds title to Block 5803, Lots 2 and 4 on the Tax Map of the Town of Morristown.  *Id.* ¶ 25.  Speedwell Associates No. 4, LP holds title to Block 5803, Lots 3 and 5 on the Tax Map of the Town of Morristown.  *Id.* ¶ 26.

Defendants were all involved in the plan to redevelop the Area in Need of Redevelopment.  The Town is a municipal corporation of New Jersey with offices located in Morristown, New Jersey.  *Id.* ¶ 27.  Timothy Dougherty is its mayor ("Mayor").  *Id.* ¶ 28.  Topology NJ, LLC ("Topology") is a municipal planning and development firm, with its principal place of business located in Newark, New Jersey, that the Town retained and paid to assist in matters related to the "Area in Need of Redevelopment."  *Id.* ¶ 29.  Phil Abramson is a Topology employee, who has served as the Town's official Town Planner concerning matters relevant to this case ("Town Planner").  *Id.* ¶ 30.  John Inglesino is special counsel to the Town ("Special Counsel").  *Id.* ¶ 31.  Morristown Development LLC and Morristown Urban Renewal Phase II, LLC (collectively, "Morristown Development") are affiliated private development firms appointed as the developer of the Area in Need of Redevelopment and are party to the 2015 Settlement Agreement and the Temporary Easement Agreement, discussed below.  *Id.* ¶ 32.

---

[1] The facts in this section are taken from the well-pled allegations in the Complaint, which the Court presumes to be true for purposes of resolving the instant motions to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B. Factual Background**

In 1999, Plaintiffs proposed that the Town designate certain property, which included Plaintiffs' properties, as an Area in Need of Redevelopment. *Id.* ¶ 5. In 2004, the Town decided to move forward with a multiphase plan to redevelop the Area in Need of Redevelopment ("Redevelopment Plan"). *Id.* ¶ 6. In 2008, the Town's Council adopted the Redevelopment Plan via ordinance. *Id.*

Phases One and Two of the Redevelopment Plan were to be developed on interior parcels located in the Area in Need of Redevelopment. *Id.* Plaintiffs controlled more than one-third of the Phase Two properties through a 99-year leasehold interest. *Id.* Phase Three was to be developed after the completion of Phases One and Two on street-facing parcels in the Area in Need of Redevelopment. *Id.* Plaintiffs owned most of the Phase Three parcels. *Id.* Phase Four was to be developed last. *Id.* Plaintiffs did not own any Phase Four parcels. *See id.*

In September 2011 and November 2012, the Town passed two additional ordinances adopting specific plans for the Area in Need of Redevelopment ("2012 Redevelopment Plan"). *Id.* ¶ 8. The 2012 Redevelopment Plan provided that Phase Three development could include up to 156 residential units and 25,000 square feet of commercial space, and would have a duration of fifty years. *Id.*

In May 2013, development of Phase One began. *Id.* ¶ 10. Development of Phase Two was expected to begin one year later. *Id.*

The Town and the Morristown Parking Authority ("MPA") filed suit against Plaintiffs, claiming that Plaintiffs had never exercised their 99-year leasehold interest over the one-third of Phase Two properties they controlled, and thus, that interest was void. *Id.* In January 2015, the parties entered into a Settlement Agreement resolving this dispute ("2015 Settlement Agreement").

*Id.* ¶ 11.  Pursuant to the 2015 Settlement Agreement's terms, Plaintiffs relinquished control over more than one-third of the parcels located in the Phase Two development area to enable the MPA to sell the property to the Phase Two developer.  *Id.*  The 2015 Settlement Agreement also provided: (1) MPA would convey to Plaintiffs two street-facing parcels for $950,000 and Plaintiffs would release their 99-year leasehold interest; (2) the Town would "immediately, continuously, timely without unreasonable delay, diligently work in good faith with [Plaintiffs] to develop an agreed to plan and amendment to the [2012 Redevelopment Plan] … and to designate [Plaintiffs'] designated entity as redeveloper of the Phase Three parcels[;]" and (3) the Town agreed that Plaintiffs "may apply to the Town to be designated as redeveloper of the Phase Three Parcels immediately and the Town shall promptly and without delay review [the application] and, if [Plaintiffs] reasonably demonstrate[] to the Town [that they have] the financial and managerial ability to develop the project, qualify [Plaintiffs] as the redeveloper of Phase Three."  *Id.*

In May 2015, the Town adopted revised plans for the Area in Need of Redevelopment via ordinance ("2015 Redevelopment Plan").  *Id.* ¶ 109.  The 2015 Redevelopment Plan reduced the permitted residential units referenced in the 2012 Redevelopment Plan for Phase Three.  *Id.*

In March 2016, Plaintiffs executed a temporary easement agreement ("Temporary Easement Agreement").  *Id.* ¶ 19, 90-92.  The Temporary Easement Agreement granted the Town a temporary pedestrian easement, which was to be terminated when Phase Three development took place and the easement would be relocated to another location.  *Id.* ¶ 92, 227-30.  Under this agreement, Morristown Development was expected to perform all inspections, maintenance, and repairs on the easement.  *Id.* ¶¶ 18, 229-30.

Beginning in July 2016, Plaintiffs presented multiple development proposals to the Town Planner concerning Phase Three.  *See id.* ¶¶ 108-223.  In September 2018, the Town Defendants

informed Plaintiffs that the Town would not accept Plaintiffs' development proposals that did not comply with the 2015 Redevelopment Plan, even if they complied with the 2012 Redevelopment Plan. *See id.* ¶ 138.

Beginning in January 2019, the Town issued a series of summonses to Plaintiffs for trash accumulation on the temporary easement. *Id.* ¶ 240.

In February 2019, the Town again adopted revised plans for the Area in Need of Redevelopment via ordinance ("2019 Redevelopment Plan"). *Id.* ¶ 252.

In August 2019, the Special Counsel made written and verbal statements concerning plans for the Area in Need of Redevelopment and Plaintiffs' role in those plans. *See id.* ¶¶ 259-79. In November 2019, the Mayor made certain statements concerning the same. *See id.* ¶¶ 287-90.

### C. Procedural Background

In November 2019, Plaintiffs filed their original federal suit against Defendants asserting nearly identical claims as those asserted now ("*Speedwell I*"). *See Speedwell, LLC, et al. v. Town of Morristown et al.*, No. 19-cv-19820. In February 2020, Plaintiffs filed an amended complaint in that same suit. Defendants moved to dismiss *Speedwell I* and those motions were fully briefed. In September 2020, the Court ordered discovery to begin. The parties also engaged in unsuccessful settlement discussions. In September 2021, before Defendants' respective motions to dismiss were decided, Plaintiffs withdrew their federal suit and filed a substantially identical suit in New Jersey Superior Court. *See Speedwell, LLC, et al. v. Town of Morristown, et al.*, Dkt. No. MRS-L-1900-21 (N.J. Sup. Ct. Sept. 8, 2021).

Defendants timely removed that suit to federal court, D.E. 1, and moved to dismiss, respectively. Plaintiffs moved to remand the suit back to state court, D.E. 14-1, but the Court

(Almonte, Mag. J.) denied that motion after finding that removal to federal court was proper.  *See* D.E. 27.

Plaintiffs bring numerous claims against Defendants.  Plaintiffs' claims include: violations of 42 U.S.C. § 1983 ("Section 1983") caused by Defendants' impairment of contracts, violations of the Fourteenth Amendment's Due Process Clause, and violations of the Fifth Amendment's Takings Clause; civil conspiracy, in connection with Plaintiffs' Section 1983 claims; fraudulent inducement; fraud – present promise without the intent to perform; breach of contract; breach of the covenant of good faith and fair dealing; tortious interference with contract; defamation; and violation of the New Jersey Constitution Contract Clause.  *See* Compl. at 111-123.

Plaintiffs seek a myriad of different forms of relief against Defendants, including, *inter alia*, specific performance, compensatory damages, punitive damages, and attorneys' fees.  *Id.* at 123-24.

Defendants' respective motions to dismiss are the subject of this Opinion.  The Special Counsel moves to dismiss Plaintiffs' defamation claim, which is brought against the Special Counsel and the Mayor pursuant to Rule 12(b)(6).  D.E. 37-2 ("SC Mot.").  Separately, Morristown Development moves to dismiss Plaintiffs' Section 1983 conspiracy claim and civil conspiracy claim pursuant to Rule 12(b)(6), and breach of contract claim pursuant to Rule 12(b)(1).  D.E. 38-1 ("MD Mot.").  Finally, and also by separate motion, the Town, the Mayor, Topology, and the Town Planner (collectively, "Town Defendants") move to dismiss all of Plaintiffs' claims pursuant to Rule 12(b)(6).  D.E. 39-2 ("Town Mot.").

## II.    LEGAL STANDARDS

A defendant may move to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  An adequate complaint must be "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8(a) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citations omitted).  However, a court will not accept as true legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint may be dismissed for failure to show that "the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*

Generally, a reviewing court may only consider the facts in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).  However, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document" may be considered.  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Separately, a defendant may also move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). This type of challenge may be brought as either a facial or factual challenge. *See Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). As is relevant here, where the motion challenges jurisdiction on the face of the complaint, a reviewing court considers only the allegations in a complaint and documents referred to therein in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In such a posture, the standard of review for a Rule 12(b)(1) motion is similar to that for a Rule 12(b)(6) motion.

## III.    DISCUSSION

### A.  The Special Counsel's Motion to Dismiss is Granted

The Special Counsel moves to dismiss Count Sixteen, which alleges that the Special Counsel and the Mayor made defamatory statements against Plaintiffs, *see* Compl. ¶¶ 387-393. The Special Counsel raises four arguments in favor of dismissal. First, Plaintiffs' defamation claim is barred by the one-year statute of limitations. SC Mot. at 1. Second, the statements at issue are protected by the absolute litigation privilege. *Id.* at 1-2. Third, Plaintiffs have not adequately pled malice to sustain a defamation claim against a limited purpose public person. *Id.* at 2. Finally, the Complaint does not meet the Rule 8(a)'s pleading standards; and statements of opinion are not actionable. *Id.* The Court agrees with the Special Counsel that the defamation claim is time-barred, and therefore, ends its analysis there.

Generally, to state a defamation claim, a plaintiff must establish that the defendant: (1) made a false and defamatory statement concerning the plaintiff; (2) communicated the statement to a third party; and (3) had a sufficient degree of fault. *Reed v. Scheffler*, 218 F. Supp. 3d 275,

281-82 (D.N.J. 2016) (citations omitted).  In New Jersey, the statute of limitations for a defamation claim is one year from the date that the defamatory statement was published.  N.J.S.A. § 2A:14-3.

1.   *Plaintiffs' defamation claim is untimely (Count Sixteen)*

The parties do not dispute that the Special Counsel made the allegedly defamatory statements by email and in a public town hearing on August 13, 2019.  The Special Counsel contends that any defamation claim against the Special Counsel for statements made on August 13, 2019 is barred by New Jersey's one-year statute of limitations for such claims, *see* N.J.S.A. § 2A:14-3.  Plaintiffs respond that the statute of limitations did not expire because the tolling provision of 28 U.S.C. § 1367(d) applies.  But as the Special Counsel correctly explains, Section 1367(d) applies only to claims dismissed pursuant to Section 1367(c), not those dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1).  *See* The Court concludes that Plaintiffs' defamation claim is untimely.

"[T]he general principal that the statute of limitations is not tolled by the filing of a complaint which is dismissed without prejudice," has been firmly adopted by the Third Circuit. *See Brennan v. Kulick*, 407 F.3d 603, 605-06 (3d Cir. 2005); *see also Moore v. Middlesex Cty. Prosecutors Office*, 738 F. Ap'x 100, 104-05 (3d Cir. 2018) (affirming district court's conclusion that dismissal of plaintiff's 2011 action without prejudice did not serve to toll the statute of limitations).  In *Brennan*, the Third Circuit explained, and reaffirmed in *Moore*, that "[a] statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice, as the original complaint is treated as if it never existed."  *Brennan*, 407 F.3d at 606; *see also Moore*, 738 F. App'x at 104.  There is one exception to that principal: "when a complaint is filed within the statute of limitations but is subsequently dismissed without prejudice in an order containing conditions for reinstatement within a specified time period, the statute of limitations is tolled

provided the plaintiff meets those conditions." *Brennan*, 407 F.3d at 607. "That requirement is important because, without it, there would be nothing to 'prevent a plaintiff from indefinitely extending the limitations period.'" *Moore*, 738 F. App'x at 104 (quoting *Brennan*, 407 F.3d at 607).

Here, *Speedwell I* was voluntarily dismissed without prejudice on September 8, 2021 pursuant to Rule 41(a)(1). *Speedwell, LLC, et al. v. Town of Morristown et al.*, No. 19-cv-19820, D.E. 67. That dismissal order did not contain any conditions for reinstatement within a specified time period, which *Moore* recognized as the one exception that would toll a plaintiff's claims. *Id.* Consequently, on September 8, 2021, when *Speedwell I* was voluntarily dismissed without any conditions for reinstatement, it became as if that original complaint "never existed." *See Brennan*, 407 F.3d at 606 ("A 'statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice,' as 'the original complaint is treated as if it never existed.'") (quoting *Cardio—Medical Assocs. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir. 1983)). Thus, later that day—September 8, 2021—, when Plaintiffs included a defamation claim in their Complaint, it fell outside of New Jersey's applicable one year statute of limitations because the allegedly defamatory statements were made on August 13, 2019.

The Court addresses why Plaintiffs' argument that Section 1367(d) tolled Plaintiffs' defamation claim fails. In *Raygor v. Regents of University of Minnesota*, 534 U.S. 533, 542 (2002), the Supreme Court was asked to determine whether Section 1367(d) tolls the statute of limitations for supplemental state law claims in a suit that is dismissed on constitutional grounds. The Supreme Court explained that "[o]n its face, subsection (d) purports to apply to dismissals of '*any* claim asserted under subsection (a).'" *Id.* (emphasis in original). Thus, it could be broadly read to apply to any claim technically 'asserted' under subsection (a) as long as it was later dismissed,

10

regardless of the reason for dismissal." *Id.* (emphasis in original).  But the Supreme Court rejected

that broad reading of Section 1367(d), and instead explained that "§ 1367(d) occurs in the context

of a statute that *specifically contemplates only a few grounds for dismissal*." *Id.* at 545 (emphasis

added).  After noting the types of claims that would be dismissed pursuant to subsections (a), (b),

and (c), and to which subsection (d) would apply, the Supreme Court stated that "it is unclear if

the tolling provision was meant to apply to dismissals for reasons unmentioned by the statute," but

went on to find that subsection (d) did not apply to dismissals on Eleventh Amendment grounds—

which are not made pursuant to subsection (a), (b), or (c).  *Id.* at 545-46, 548.

Given the Supreme Court's refusal to apply Section 1367(d) to a claim dismissed for

reasons not contained in subsections (a), (b), or (c), this Court concludes Section 1367(d) does not

apply to Plaintiffs' voluntary dismissal of *Speedwell I* pursuant to Rule 41(a)(1)—a reason not

contained in subsections (a), (b), or (c) of Section 1367.  *See Parish v. HBO & Co.*, 85 F. Supp.

2d 792, 797 (S.D. Ohio 1999) (concluding that "although § 1367(d) literally states that the statute

of limitations is tolled for claims that are voluntarily dismissed at the same time or after 'the

dismissal' of the supplemental claim, this Court does not interpret the phrase 'the dismissal' to

include voluntary dismissal, pursuant to Fed. R. Civ. P. 41(a).").

Accordingly, Plaintiffs' defamation claim against the Special Counsel will be dismissed

with prejudice, as it is untimely.

### B.  Morristown Development's Motion to Dismiss is Granted

Morristown Development moves to dismiss: Count Six, which alleges a conspiracy under

Section 1983 caused by the impairment of Plaintiffs' contractual rights, as well as a taking, *see*

Compl. ¶¶ 348-52; Count Ten, which alleges a breach of the Temporary Easement Agreement, *see*

*id.* ¶¶ 363-67; and Count Fourteen, which alleges a civil conspiracy under state law caused by a

breach of the Temporary Easement Agreement, *see id.* ¶¶ 379-83.  MD Mot. at 1.  Morristown Development raises two arguments: (1) Counts Six and Fourteen inadequately plead the necessary "meeting of the minds" for a conspiracy claim; and (2) the Court should decline to exercise supplemental jurisdiction for Count Ten.   *Id.* at 2.   The Court agrees with Morristown Development.

1.  *Plaintiffs Have Not Plausibly Plead an Underlying Constitutional Violation to Support Conspiracy Claims (Counts Six and Fourteen)*

Morristown Development contends that the Section 1983 conspiracy claim should be dismissed because: (1) Plaintiffs have not adequately pled a valid underlying constitutional violation based on an alleged breach of the Temporary Easement Agreement; and (2) Plaintiffs have not plausibly alleged facts sufficient to establish a meeting of the minds between Morristown Development and the Town Defendants.  MD Mot. at 14-17.  Plaintiffs respond that they have plausibly pled a valid underlying constitutional violation: the Town engaged in a "custom" or "usage" and a policy by which its officials violated the Town's contractual obligations to Plaintiffs. D.E. 50 ("Opp'n to MD") at 19-20.  Plaintiffs add that they have plausibly pled that the Town and Morristown Development agreed and acted in concert to deprive Plaintiffs of their contracted-for constitutional rights to have the relevant easement be "non-exclusive" and only be "temporary," and to ensure that Morristown Development performed all maintenance obligations as to the easement.  *Id.* at 22.

Ultimately, the Court need only address Morristown Development's first argument to conclude that Plaintiffs have not stated a Section 1983 conspiracy claim against Morristown Development in Count Six.  Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects [] any citizen of the United States [] to the deprivation of any rights,

> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.  To state a claim for relief under Section 1983, a plaintiff must allege: (1) a

violation of a constitutional right; and (2) that the alleged deprivation was committed or caused by

a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v.*

*George*, 641 F.3d 560, 563 (3d Cir. 2011).

Here, Plaintiffs have not plausibly alleged the violation of an underlying constitutional

claim, and thus, cannot meet the first element for a Section 1983 claim.  Specifically, with respect

to Morristown Development, Plaintiffs' Section 1983 conspiracy claim is based upon an alleged

violation of the Contract Clause,[2] *see* Compl. ¶¶ 348-252, but Plaintiffs have not plausibly pled

such a violation.

The Contract Clause provides that "[n]o State shall [] pass any [] Law impairing the

Obligation of Contracts."  U.S. Const. art. I, § 10, cl.1.  "Despite its broad language, the Contract

Clause does not disrupt a state's ability to exercise its police powers in service of the public

interest, even if it affects existing contracts."  *Nekrilov v. City of Jersey*, 45 F.4th 662, 678 (3d Cir.

2022) (citing *Watters v. Bd. of Sch. Dirs. of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)); *see also*

*United Steel Paper and Forestry Rubber Mfg. Allied Indus. and Serv. Workers Int'l Union AFL-*

*CIO-CLC v. Gov't of the V.I.*, 842 F.3d 201, 210 (3d Cir. 2016).  The Third Circuit analyzes three

---

[2] In opposition, and for the first time against Morristown Development, Plaintiffs argue that the
Section 1983 conspiracy claim against Morristown Development is based both on the Contract
Clause and the Takings Clause.  *See* Opp'n to MD at 22-23.  But Plaintiffs' Takings Clause
allegations omit any mention of Morristown Development.  *See* Compl. ¶¶ 348-352.  Plaintiffs'
separate Takings Clause claim (Count Four) is not brought against Morristown Development.  *See*
Compl. ¶¶ 338-342.  Thus, the Court will not infer that Plaintiffs intended their Section 1983
conspiracy claim against Morristown Development to be premised on an underlying violation of
the Takings Clause.

factors to determine whether a law violates the Contract Clause: (1) "whether the law has operated as a substantial impairment of a contractual relationship; [(2)] whether the government entity, in justification, had a significant and legitimate public purpose behind the regulation; and [(3)] whether the impairment is reasonable and necessary to serve this important public purpose." *United Steel Paper*, 842 F.3d at 210 (citing *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411-13 (1983)).

Under the first factor, the Court must determine whether the law "impair[ed]" a contractual relationship, and if so, whether such impairment was "substantial." *United Steel Paper*, 842 F.3d at 210 (emphasis added).[3] Whether an impairment is "substantial" turns on "whether [the] legitimate expectations [of the plaintiffs] have been thwarted." *Id.* (citing *Transp. Workers Union of Am., Local 290 ex rel. Fabio v. Se. Pa. Transp. Auth.*, 145 F.3d 619, 622 (3d Cir. 1988)). The plaintiffs' legitimate expectations are thwarted if the law conflicts with a term in the parties' contract. *See, e.g., id.* at 210-11; *Transp. Workers Union*, 145 F.3d at 621.

Finally, the first factor requires that Plaintiffs demonstrate that a "*change* in state law has 'operated as a substantial impairment of a contractual relationship.'" *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978) (emphasis added)); *see also Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (finding that the contract in question must preexist the passage of the state law); *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 124 (2d Cir. 2004) ("The Contract Clause prohibits the impairment by the state of existing contracts…[T]he statute must have been passed *after* the contract was executed.") (emphasis added).

---

[3] The Contract Clause "applies equally to municipal ordinances" as it does to state legislation. *Nekrilov*, 45 F.4th at 678 (quoting *Alarm Detection Sys., Inc. v. Village of Schaumburg*, 930 F.3d 812, 822 (7th Cir. 2019).

Here, Plaintiffs fail to allege the existence of a law or municipal ordinance that has substantially impaired their contractual rights.  Plaintiffs argue only that it is sufficient that the Town "engaged in 'custom' and 'usage' and a policy by which its officials violated [the Town's] contractual obligations."  Opp'n to MD at 19-20.  But precedent specifically requires that a law or municipal ordinance interfere with Plaintiffs' contractual rights, not a custom, usage, and/or policy.  Additionally, that law or municipal ordinance must have been enacted after the existence of the contract at issue, which Plaintiffs do not allege.  *See Mabey Bridge & Shore, Inc. v. Schoch*, 666 F.3d 862, 874 (3d Cir. 2012) (finding the Contract Clause was not violated where plaintiff failed to show a "change in state law" that impaired its contracts).  Because Plaintiffs have not plausibly alleged an underlying violation of the Contract Clause, Plaintiffs' Section 1983 conspiracy claim cannot proceed.  Accordingly, the Court dismisses Count Six.

Next, with respect to Plaintiffs' civil conspiracy claim under state law, Count Fourteen, Morristown Development contends that this claim fails because: (1) New Jersey does not recognize a cause of action for conspiracy to commit breach of contract; and (2) like Count Six, Plaintiffs' have not plausibly alleged facts sufficient to establish a meeting of the minds sufficient to establish a conspiracy.  MD Mot. at 17-23.  Plaintiffs respond that they have asserted four counts alleging a tort was committed by one or more defendants that can serve as the basis for Plaintiffs' state conspiracy claim.  Opp'n to MD at 26-27.  And Plaintiffs add that like with Count Six, they have adequately pled the elements of a conspiracy claim.  *Id.* at 27.  Like Plaintiffs' Section 1983 conspiracy claim, the Court needs only address Morristown Development's first argument to conclude that Plaintiffs have not stated a civil conspiracy claim under New Jersey law.

To state a civil conspiracy claim, a plaintiff must allege that "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means,

the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Tico Equip., Inc. v. Manor*, 2011 U.S. Dist. LEXIS 17936, at *23 (D.N.J. Feb. 22, 2011) (quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (N.J. 2005) (citation omitted)).   The "gist of [a conspiracy] claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'" *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993), *certify. denied*, 135 N.J. 468 (1994) (citation omitted).   A plaintiff must be able to show that "there was 'a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences.'" *Id.* at 365 (citation omitted).

However, to succeed on a civil conspiracy claim, a plaintiff must assert a viable underlying tort claim. *Trico Equip., Inc.*, 2011 U.S. Dist. LEXIS 17936, at *24 (citing *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998) ("A civil action for conspiracy is essentially a tort action.")).   Significantly, "there can be no action in civil conspiracy for *breach of contract* or unjust enrichment because neither claim sounds in tort." *Doherty v. The Hertz Corp.*, 2010 U.S. Dist. LEXIS 124714, at *25 n.8 (D.N.J. Nov. 24, 2010) (emphasis added); *see also Trico Equip., Inc.*, 2011 U.S. Dist. LEXIS 17936, at *24 (denying summary judgment on civil conspiracy claim because "there is no cause of action for civil conspiracy for a breach of contract").

Here, Plaintiffs' civil conspiracy claim is premised on a "breach of the temporary easement agreement." *See* Compl. ¶¶ 379-383.   The complained-of Temporary Easement Agreement is a contract, and thus, an alleged breach of this agreement cannot serve as the underlying tort for Plaintiffs' civil conspiracy claim.   In opposition, Plaintiffs assert that, separate from Count Fourteen, the Complaint contains counts that allege underlying torts (*i.e.*, tortious interference with a contract) that can sustain the civil conspiracy claim, but these other underlying torts are not

alleged with respect to Count Fourteen nor are they alleged against Morristown Development. *See* Compl. Counts Four, Seven, Eight, and Twelve. Without a viable underlying tort, the civil conspiracy claim cannot proceed. Accordingly, the Court dismisses Count Fourteen.

2. *The Court Declines to Exercise Supplemental Jurisdiction Over Count Ten*

For the reasons expressed below, *supra* Section III.C.9., the Court declines to exercise supplemental jurisdiction over Count Ten.

**C. The Town Defendants' Motion to Dismiss is Granted**

The Town Defendants move to dismiss Counts One and Five of the Complaint, which allege violations of Section 1983 caused by the impairment of Plaintiffs' contractual rights, *see* Compl. ¶¶ 324-29, 343-47; Count Two, which alleges a due process violation under Section 1983, *see id.* ¶¶ 330-33; Count Three, which alleges a conspiracy under Section 1983, with respect to a breach of contract and the deprivation of Plaintiffs' due process rights, *see id.* ¶¶ 334-37; Count Four, which alleges a violation of the Takings Clause under Section 1983, *see id.* ¶¶ 338-42; Count Six, which alleges a conspiracy under Section 1983 caused by the impairment of Plaintiffs' contract rights, as well as a taking, *see id.* ¶¶ 348-52; Counts Seven and Eight, which allege claims of fraudulent inducement and fraud, respectively, *see id.* ¶¶ 353-57; Counts Nine and Ten, which allege breach of contract and breach of temporary easement claims, respectively, *see id.* ¶¶ 358-67; Count Eleven, which alleges a breach of the covenant of good faith and fair dealing claim, *see id.* ¶¶ 368-71; Count Twelve, which alleges a tortious interference with a contract claim, *see id.* ¶¶ 372-74; Counts Thirteen and Fourteen, which allege civil conspiracy claims under New Jersey law, concerning an alleged breach of contract and breach of temporary easement, respectively, *see id.* ¶¶ 375-83; Count Fifteen, which alleges an impairment of contractual rights in violation of New

Jersey's constitution, *see id.* ¶¶ 384-86; and Count Sixteen, which alleges a defamation claim, *see id.* ¶¶ 387-93.

The Town Defendants argue that Plaintiffs' Complaint is an ordinary breach contract claim dressed up as constitutional violations, fraud, and other tort-based claims. *See* Town Mot. at 1. The Court agrees.

      1. *Plaintiffs Have Not Plausibly Pled a Contract Clause Violation (Counts One, Five, and Fifteen)*

First, the Town Defendants contend that Counts One, Five, and Fifteen, which all assert impairments of Plaintiffs' contractual rights, pursuant either to Section 1983 or New Jersey's constitution, should be dismissed because Plaintiffs cannot maintain constitutional claims based upon allegations suggesting a simple breach of contract. *See* Town Mot. at 7. Nowhere in their response do Plaintiffs explain, and this Court cannot discern, why these claims rise above an ordinary breach of contract.

For purposes of this subsection's analysis, the Court adopts the paragraphs above outlining the requirements needed to allege a Contract Clause violation, *supra* Section III.B.1. Recall that the first factor asks whether a subsequent change in law has operated as a substantial impairment of an already-existing contractual relationship. *See Gen. Motors Corp.*, 503 U.S. at 186; *Fabri*, 387 F.3d at 124. Here, applying the first factor of the Third Circuit's three-factor analysis merits dismissal of Counts One, Five, and Fifteen.

Fatal to Plaintiffs' Contract Clause-based claims is the fact that a breach of contract by a state, without more, does not rise to the level of an unconstitutional impairment of a contract. *See Gagliardi v. Clark*, 2006 U.S. Dist. LEXIS 70509, at * 47 (W.D. Pa. Sept. 28, 2006) ("Unconstitutional impairment of contracts must be distinguished from ordinary breach of contract."); *see id.* ("The Contract Clause does not protect private parties from governmental

breaches of contract.") (quoting *Yellow Cab Co. v. City of Chicago*, 3 F. Supp. 2d 919, 922-23 (N.D. Ill. 1998)).  In *Hays v. Port of Seattle*, 251 U.S. 233, 237 (1920), the Supreme Court outlined that what distinguishes an unconstitutional impairment from an ordinary breach of contract is whether a law has the "effect of violating or repudiating a contract previously made by the State[.]"  If the answer is yes, then it is an ordinary breach of contract, and not an unconstitutional impairment.  *See id. at 237-38* (finding no unconstitutional impairment of a contract where the legislation at issue "simply, after seventeen years of delay without substantial performance of the contract, provided that the project should be abandoned and title to the public lands turned over to the municipality. Supposing the contract had not been abandoned by complainant himself or terminated by his long delay, its obligation remained as before, and formed the measure of his right to recover from the State for the damages sustained."); *see also Gagliardi*, 2006 U.S. Dist. LEXIS 70509, at *47-48 ("[I]f some legislative action announces the state's refusal to perform its contractual obligation, the state has simply breached the contract.") (citation omitted).  Thus, the key to whether a breach of contract rises to the level of an unconstitutional impairment is whether the "state exercise[d] [its] legislative power in a way that eliminate[d] the availability of a remedy or action for damages by the non-breaching party." *Gagliardi*, 2006 U.S. Dist. LEXIS 70509, at *47-48 (citation omitted).

Here, Plaintiffs allege that the Town Defendants did not perform their obligations pursuant to the 2015 Settlement Agreement, *see* Compl. ¶¶ 108-120, 252-58, 326, 385, and the Temporary Easement Agreement, *see id.* ¶¶ 345, and that certain subsequent ordinances adopted by the Town were not in line with some of Plaintiffs' assumptions.  But the Complaint does not allege that any subsequent ordinances eliminated Plaintiffs' potential contractual remedies.  In fact, Plaintiffs assert separate breach of contract claims based on the same facts as Counts One, Five, and Fifteen.

*Compare* Compl. at 111-12, 115-16, 122, *with* Compl. at 119-120.  The Court concludes that Plaintiffs have not asserted a Contract Clause violation.  Accordingly, Counts One, Five, and Fifteen are dismissed.

> 2. *Plaintiffs Have Not Plausibly Pled a Substantive Due Process Violation (Counts Two and Three)*

Second, the Town Defendants contend that Counts Two and Three, which both assert Fourteenth Amendment substantive due process claims under Section 1983 as their basis, should be dismissed because they are, at bottom, breach of contract claims disguised as constitutional claims.  *See* Town Mot. at 11.  The Court agrees that Plaintiffs have not plausibly alleged a substantive due process violation, and thus, neither Count Two nor Count Three can proceed at this time.

To state a Section 1983 substantive due process claim, a plaintiff must allege: "(1) the particular interest is protected by the Fourteenth Amendment[;] and (2) the government's deprivation of that protected interest shocks the conscience."  *Connection Training Servs. v. City of Phila.*, 258 F. App'x 315, 319 (3d Cir. 2009) (citing *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)); *see also Gottlieb v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (stating that substantive due process is violated when state conduct is arbitrary, or conscience shocking, in a constitutional sense) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)).  The Fourteenth Amendment "prohibits state action which 'deprive[s] any person of life, liberty, or property, without due process of law.'"  *Connection Training Servs.*, 358 F. App'x at 319 (*quoting* U.S. Const. amend. XIV, § 1).

Where a plaintiff can establish a protected property interest, then "substantive due process protects [him] from arbitrary or irrational deprivation, regardless of the adequacy of procedures used," *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000), but "only the most egregious

official conduct can be said to arbitrary in the constitutional sense," *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).  However, the history of substantive due process "counsels caution and restraint" and "each new claim to substantive due process protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed."  *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (citations and internal brackets omitted).  And as the Third Circuit has explained, a property interest must be constitutionally "fundamental" in order to implicate substantive due process.  *See Mauriello v. University of Medicine & Dentistry of New Jersey*, 781 F.2d 46, 50 (3d Cir. 1986) (noting that a graduate student's interest in continued academic enrollment "bore little resemblance to the fundamental interests that previously had been viewed as implicitly protected by the Constitution"); *Independent Enterprises Inc. v. Pittsburgh Water & Sewer Authority*, 103 F.3d 1165, 179-80 (3d Cir. 1997) (explaining that a low bidder's entitlement to a state contract is "not the sort of 'fundamental' interest entitled to the protection of substantive due process"); *Nicholas*, 227 F.3d at 142 (noting that "[i]if the interest is not 'fundamental,' however, the governmental action is entirely outside the ambit of substantive due process and will be upheld so long as the state satisfies the requirements of procedural due process").  This standard is extremely difficult to meet because the alleged deprivation must shock the conscience.  *See Chainey*, 523 F.3d at 219.

Here, Plaintiffs allege that they were arbitrarily and capriciously deprived of their ownership interest located within the designated Phase 3 area.  Compl. ¶¶ 331-32.  The Complaint states that the Town Defendants caused this deprivation by preventing Plaintiffs from "receiving the benefits of the 2015 Settlement Agreement and/or from receiving the benefits of Plaintiff's ownership of real property located in Phase 3."  *Id.* ¶ 335.  What is missing from Plaintiffs' allegations is any government action that rises to the level of shocking the conscience.  *See DB*

*Enter. Developers & Builders, Inc. v. Miozzie*, 394 F. App'x 916, 919 (3d Cir. 2010) (affirming district court's dismissal of developer's Section 1983 substantive due process claim where the developer was working on a project on a street that bordered another township and that township, along with its mayor and a state representative, allegedly insisted that the developer perform work on the sewers on its side of the street with no compensation for such work and threatened to shut down the developer's other work if it did not comply, because any deprivation that occurred did not meet the "shock the conscience" standard); *see also Locust Valley Golf Club, Inc. v. Upper Saucon Twp.*, 391 F. App'x 195, 199 (3d Cir. 2010) (concluding that even if the township official's zoning actions were motivated by "spite in remote hope that he might one day purchase the property himself" was insufficiently egregious to "shock the conscience").

Additionally, as the Town Defendants note, Plaintiffs continue to own the properties in question and the deprivation they allege is, at bottom, a breach of contract claim. *See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 361 (3d Cir. 1997) ("just because the state's actions impact [] a private business does not mean that this action somehow infringes on the Fourteenth Amendment rights of the private [actor]"); *see also Rivkin v. Dover Township Rent Leveling Bd.*, 143 N.J. 352, 368 (1996) ("Other federal circuits have found that when property rights are denied in the course of conventional municipal decisionmaking there is no substantive due process violation." (citing *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102 (8th Cir. 1992) (determining that city's bad-faith violation of state law in enforcing invalid zoning plan against development remains violation of state law and does not give rise to substantive due process violation); *Harding v. County Door*, 870 F.2d 430, 431-32 (7th Cir. 1989) (finding no substantive due process violation when county revoked building permit after construction of housing project had commenced, notwithstanding that state reviewing court had

determined the action to be illegal), *cert. denied*, 493 U.S. 853 (1989))).  Accordingly, the Court concludes that Plaintiffs' substantive due process claim must be dismissed, and because Plaintiffs' conspiracy claim is premised on the same alleged substantive due process violation, the Court will also dismiss that claim.

> 3.  *Plaintiffs Have Not Plausibly Pled a Takings Clause Violation (Count Four)*

Third, the Town Defendants contend that Count Four, alleging a Section 1983 Takings Clause violation, should be dismissed because the alleged taking of the temporary easement that Plaintiffs granted to the Town and Morristown Development is the result of a contractual relationship, which is not a constitutional violation.  *See* Town Mot. at 13.  The Court agrees.

To state a Section 1983 Takings Clause claim, a plaintiff must plausibly plead an underlying violation of the Fifth Amendment Takings Clause.  The Takings Clause prohibits the taking of private property "for public use, without just compensation," U.S. Const. amend. V, and applies to state and local governments through the Fourteenth Amendment.  *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018).  "A threshold determination in any takings case is whether the plaintiff has asserted a legally cognizable property interest."  *Nekrilov*, 45 F.4th at 669 (citing *In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017)).  A plaintiff who does not have a legally cognizable property interest cannot have a cognizable Takings Clause claim either.  *Id.* (citing *In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d at 526)).  Once this threshold requirement is met, the Court then examines whether there has been a taking of that property interest for public use and without just compensation.  *Id.* (citing *In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d at 525); *see also First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 314 (1997) (concluding that the Takings Clause "does not

23

prohibit the taking of private property, but instead places a condition on the exercise of that power.").

Significantly, while an alleged failure by a government to fulfill its contractual obligations would constitute a breach of contract, it is not itself a taking of property compensable under the Takings Clause.  *See United States v. Winstar Corp.*, 518 U.S. 839, 868-71 (1996); *see id.* at 919 (Scalia, J., concurring) ("Virtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance: The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it,— and nothing else.").  "A contract itself does constitute a property interest that potentially can be the subject of a taking. A contract is not considered taken, however, when the Government breaches a contract, but does not deprive a contract holder of the right to seek damages for breach of that contract."  *Castle v. United States*, 301 F.3d 1328, 1342 (Fed. Cir. 2002).

Here, Plaintiffs have not been deprived of the right to seek damages for the alleged breach of contract; in fact, Plaintiffs have asserted separate breach of contract claims, which relies on the same facts, *see* Compl. Counts Nine and Ten.  Additionally, Plaintiffs have not pled that the Town Defendants engaged in any "legislative or administrative actions that abrogated or repudiated any contract obligation or otherwise impaired [Plaintiffs'] ability to enforce [their rights] secured under the terms of the contract."  *See Janicki Logging Co. v. United States, 36 Fed. Cl. 338, 346 (1996), aff'd, 124 F.3d 226 (Fed. Cir. 1997).*  Because there is no taking, then there can be no Takings Clause violation.  Accordingly, the Court finds that Plaintiffs have not stated a Takings Clause violation, and thus, Count Four, Plaintiffs' Section 1983 Takings Clause claim will be dismissed.

4.  *Plaintiffs Have Not Plausibly Pled Underlying Constitutional Violations to Support*
    *Section 1983 Conspiracy Claims (Counts Three and Six)*

Fourth, the Town Defendants argue that Count Three, which alleges a Section 1983 conspiracy claim premised on the deprivation of Plaintiffs' due process rights, and Count Six, which alleges a Section 1983 conspiracy claim premised on Contract Clause and Takings Clause violations, should be dismissed because Plaintiffs have failed to assert a viable underlying constitutional violation.   Town Mot. at 14.   Plaintiffs do not directly respond to the Town Defendants' argument; instead, they attempt to rescue their conspiracy claims by arguing that the Court can infer an understanding, agreement, or meeting of the minds between the Town Defendants to violate Plaintiffs' constitutional rights.   D.E. 45 ("Opp'n to Town") at 17-19.   The Court agrees with the Town Defendants.

As explained above, *supra* Section III.B.1., to state a Section 1983 conspiracy claim, a plaintiff must plausibly plead that "persons acting under color of state law conspired to deprive him of a federally protected right."   *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999).   "As a threshold matter, however, a [Section] 1983 conspiracy claim only arises when there has been an actual deprivation of a [constitutional] right."   *Perano v. Township of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) (citing *Andree v. Ashland County*, 818 F.2d 1306, 1311 (7th Cir. 1987)).   Therefore, it is inherent that "absent any underlying constitutional violation, there [can] be no [Section] 1983 conspiracy liability."   *Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019); *see id.* at 601, 604 (affirming finding that because plaintiff's First and Fourteenth Amendment claims failed that his Section 1983 conspiracy claim failed as well, as it lacked an underlying constitutional violation).

Here, the Court has found that Plaintiffs' have not stated a substantive due process claim, *supra* Section III.C.2.  Thus, Count Three, which purports to ground itself on the violation of that underlying constitutional right, also fails.

Additionally, the Court's analysis concerning Count Six above, finding that Plaintiffs have not plausibly pled a Contract Clause violation to support a Section 1983 conspiracy claim against Morristown Development, *supra* Section III.B.1., applies with equal force to the Town Defendants.  And to the extent that Count Six is premised on the Town Defendants violating the Takings Clause, the same logic applies, because Plaintiffs have not stated a Takings Clause violation, *supra* Section III.C.3.  Therefore, without an underlying constitutional right to ground itself on, Plaintiffs' Section 1983 conspiracy claim fails.  Accordingly, Count Six will be dismissed.

5.  *Plaintiffs' Fraud Claims Are Not Plausibly Pled (Counts Seven and Eight)*

Next, the Town Defendants contend that Count Seven, which alleges a fraudulent inducement claim premised on the Town Defendants representations concerning the 2015 Settlement Agreement and the Temporary Easement Agreement, and Count Eight, which alleges a fraudulent performance claim premised on the Town Defendants representations concerning the 2015 Settlement Agreement, should be dismissed because the two claims are barred by New Jersey economic loss doctrine.  *See* Town Mot. at 15.  Plaintiffs respond that their claims are premised on the Town Defendants' affirmative misrepresentations when negotiating each of the relevant contracts, rather than about the terms in those contracts, and thus, are not barred by the economic loss doctrine.  Opp'n to Town at 21-23.  The Court concludes that Plaintiffs have not stated a claim as to either Count Seven or Count Eight.

"The economic loss doctrine stands for a simple proposition: New Jersey plaintiffs may not recover economic damages in tort when their entitlement to relief flows exclusively from a contract." *Zurich Am. Ins. Co. v. Asphalt Paving Sys., Inc.*, 2023 U.S. Dist. LEXIS 6525, at *8 (D.N.J. Jan. 13, 2023) (citing *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Eco.*, 66 F.3d 604, 618 (3d Cir. 1995)). Ultimately, the economic loss doctrine encourages "eliminat[ing] recovery on a contract claim [dressed] in tort claim clothing." *G&F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588-89 (D.N.J. 2014) (citation omitted). Thus, where a tort claim seeks only "to enhance the benefit of the bargain [a plaintiff] contracted for," the economic loss doctrine bars the claim. *Id.*

However, in the context of fraud claims, application of the economic loss doctrine is not well settled. *See, e.g.*, *Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 144 (3d Cir. 2001), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 571 U.S. 177 (2014) (noting unsettled application of the economic loss doctrine to fraud claims based on the same underlying facts as a contract claim as "very complex and troublesome"). Courts in this District have made a distinction between fraud in the performance and fraud in the inducement of a contract. *See RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) ("Fraud claims can proceed alongside breach of contract claims where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations.") (citation omitted); *see also G&F Graphic Servs., Inc.*, 18 F. Supp. 3d at 590-93 (recognizing distinction between fraud in the inducement and fraud in the performance in the context of the economic loss doctrine).

Because a fraud in the performance claim concerns the nonfulfillment of a warranty or a guarantee contained within the four corners of a contract, it is barred by the economic loss doctrine. *See Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 607 (D.N.J. 2002).  In contrast, a fraud in the inducement claim concerns pre-contractual misrepresentations, so typically falls outside of the four corners of a contract, and thus, is not barred by the economic loss doctrine. *See id.*; *see also Touristic Enters. Co. v. Trane Inc.*, 2009 U.S. Dist. LEXIS 106145, at *6 (D.N.J. Nov. 13, 2009) ("Generally, fraud claims that are extrinsic to the underlying contract, and consequently not barred under the economic loss doctrine, are claims for fraudulent inducement.") (citations omitted).

In Count Seven, Plaintiffs' fraudulent inducement claim, the Complaint alleges that the Town Defendants made false representations "in connection with the negotiation" of the 2015 Settlement Agreement and the Temporary Easement Agreement.  *See* Compl. ¶¶ 354-55.  Because Plaintiffs' allegations concern pre-contractual misrepresentations, as they allegedly occurred during the negotiation of the two contracts, the Court concludes that they are extrinsic to the contracts and are not barred by the economic loss doctrine.

Nevertheless, Count Seven does not meet the heightened pleading requirements for a fraud claim.  Federal Rule of Civil Procedure 9(b) requires that where "fraud or mistake" are alleged, a plaintiff must describe "with particularity" the circumstances that constitute the fraud or mistake. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)); *see also Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 257 (D.N.J. 1990) (explaining that Rule 9(b) requires pleading with "some precision and some measure of substantiation.").  To meet this heightened pleading standard, a plaintiff must allege "the date, time and place of the alleged fraud or otherwise

inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Further, the plaintiff must allege who made the purported misrepresentations and what specific misrepresentations were made." *Id.*

A fraud in the inducement claim requires "a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." *Gleason*, 243 F.3d at 144-45. "[W]here a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud[.]" *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1031-32 (D.N.J. 1995) (internal citation omitted). But "a showing of non-performance [of the contract] will not suffice to demonstrate that the promise to perform was fraudulent when made. By the same token, allegations that refer to conduct that took place after the contract was executed do not sufficiently allege pre-contractual intent." *Montclair State Univ. v. Oracle USA, Inc.*, 2012 U.S. Dist. LEXIS 119509, at *29 n.8 (D.N.J. Aug. 23, 2012) (noting that pre-contractual intent must be alleged for fraud in the inducement claim).

Here, Plaintiffs do not plead pre-contractual intent with particularity. Plaintiffs' allegations concerning the Town Defendants' conduct following the execution of the agreements do not suffice. Accordingly, Count Seven will be dismissed.

Furthermore, Plaintiffs argue that Count Eight is not barred by the economic loss doctrine because it alleges that the Town Defendants engaged in false misrepresentations not only in the execution of the 2015 Settlement Agreement, but also "as part of the negotiation" of that contract. *See* Opp'n to Town at 22; *see also* Compl. ¶ 357(a). Plaintiffs' argument is unavailing. Count Eight is specifically captioned: "Fraud – Present Promise Without the Intent to Perform." *See*

Compl. at 118.  The Court will not permit Plaintiffs to rewrite their claim in response to the Town

Defendants' motion, particularly given that Count Eight's caption can only lead to the inference

that Plaintiffs allege a fraud in the performance claim.  Additionally, were the Court to accept

Plaintiffs' argument that Count Eight is not a fraud in the performance claim, then it would plainly

duplicate Count Seven, which is a fraud in the inducement claim.  Therefore, the Court concludes

that Count Eight is intrinsic to the 2015 Settlement Agreement and is barred by the economic loss

doctrine.  Accordingly, Count Eight will be dismissed.

> 6.  *Plaintiffs Have Not Plausibly Pled Underlying Tort Claims to Support Civil Conspiracy Claims (Counts 13 and 14)*

Next, the Town Defendants contend that Counts Thirteen and Fourteen, which both allege

civil conspiracy claims under New Jersey law, should be dismissed because New Jersey law does

not recognize such claims when they are premised on underlying breach of contract claims.  Town

Mot. at 17-18.  For the same reasons expressed above, *supra* Section III.B.1., the Court agrees

with the Town Defendants.  Plaintiffs have failed to assert an underlying tort claim to support their

civil conspiracy claims.[4]  Accordingly, the Court will dismiss Counts Thirteen and Fourteen.

> 7.  *Plaintiffs Have Pled a Tortious Interference Claim Against An Improper Party (Count Twelve)*

The Town Defendants argue that Count Twelve, which alleges a tortious interference with

a contract claim against the Mayor, the Town Planner, and Topology, should be dismissed because

such a claim may only lie against a third-party to the underlying contract.  Town Mot. at 18-19.

Plaintiffs respond that the Mayor, the Town Planner, and Topology were acting outside of their

---

[4] Plaintiffs' response, which argues that these two claims are premised on underlying fraud claims, misses the mark entirely.  It is clear from the face of the Complaint that Count Thirteen and Count Fourteen allege underlying breaches of contract, and not underlying torts.  The Court will not allow Plaintiffs to change their pleadings in this manner.

official capacities, and thus, may be considered third-parties for purposes of the underlying contract.  *See* Opp'n to Town at 24-26.  The Court concludes that they were not third-parties to the 2015 Settlement Agreement—the underlying contract—because they were integral to that contract.

"The remedy available between contractual parties is an action for breach of contract. By contrast, tortious interference is a third-party tort; it will only lie against defendants who are *not* parties to the contract."  *AdCorp Media Grp. v. Bach*, 2016 U.S. Dist. LEXIS 32490, at *4-5 (D.N.J. Mar. 11, 2016) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.* 116 N.J. 739, 752 (1989).  A tortious interference claim may not lie against a party to the contract, nor his agent, acting within the scope of employment.  *Id.* at *5 (citing *DiMaria Construction., Inc. v. Interarch*, 351 N.J. Super. 558, 567-73 (App. Div. 2001); *DeJoy v. Comcast Cable Communications Inc.*, 941 F. Supp. 468, 476-77 (D.N.J. 1996); *Fioriglio v. City of Atlantic City*, 996 F. Supp. 379, 392-93 (D.N.J. 1998); *Obendorfer v. Guano Group, Inc.*, 838 F. Supp. 950, 953 (D.N.J. 1993).

Here, to the extent that the Mayor, the Town Planner, and Topology were involved with the performance of the 2015 Settlement Agreement, they were doing so on behalf of the Town. Nowhere in the Complaint's verbose allegations do Plaintiffs plead that the Mayor, the Town Planner, and Topology were acting outside of the scope of their roles as agents of the Town.  Thus, Plaintiffs' tortious interference claim is not pled against proper third-party defendants. Accordingly, Count Twelve will be dismissed.

### 8.  *Plaintiffs' Defamation Claim is Untimely (Count Sixteen)*

Next, the Town Defendants contend that Count Sixteen, which alleges a defamation claim, should be dismissed for three reasons: (1) the claim was filed after the one-year statute of limitations expired; (2) Plaintiffs lack standing because the statements were directed at a non-party individual; and (3) the statements were protected opinions.  Town Mot. at 19.  For the same reasons

expressed above, *supra* Section III.A.1., the Court agrees with the Town Defendants. Plaintiffs' defamation claim against the Mayor is barred by the applicable one-year statute of limitations because the alleged defamatory statements were made in November 2019 and this lawsuit was not filed until September 8, 2021. Accordingly, Plaintiffs' defamation claim against the Mayor will be dismissed with prejudice, as it is untimely.

9. *Supplemental Jurisdiction Will Not Be Exercised Over Remaining State Contract Claims (Counts Nine, Ten, and Eleven)*

Finally, the Town Defendants assert that following the dismissal of the Complaint's federal claims that Counts Nine and Ten, which both allege breach of contract claims, and Count Eleven, which alleges a breach of the covenant of good faith and fair dealing claim, should be dismissed for lack of subject matter jurisdiction. Town Mot. at 22. The Court will not exercise supplemental jurisdiction over Plaintiffs' state law contract claims, but rather than dismiss the claims, the Court will remand these claims to state court.

In relevant part, 28 U.S.C. § 1367(c) states that "district courts may decline to exercise supplemental jurisdiction over a claim [] if [] the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or] the district court has dismissed all claims over which it has original jurisdiction[.]" However, "absent some compelling circumstances, it is generally proper for the district court to decline to exercise supplemental jurisdiction." *McLemore v. City of Trenton*, 2007 U.S. Dist. LEXIS 52355, at *17 (D.N.J. July 19, 2007) (citations omitted); *see also Shaffer v. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (holding that "pendent jurisdiction [over state law claims] should be declined where the federal claims are no longer viable, absent 'extraordinary circumstances.'") (citation omitted); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (explaining that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline

to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (citation omitted); *A.P. v. Allegro Sch., Inc.*, 2017 U.S. Dist. LEXIS 164371, at *21 (D.N.J. Sept. 29, 2017) ("Because I have held that there is no [federal] claim, the state law claims, too, cannot be heard.") (citation omitted).

Additionally, district courts should abstain from deciding state law issues "'both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'" *McLemore*, 2007 U.S. Dist. LEXIS 52355, at *17-18 (citation omitted). Where "the state [law] issues substantially predominate, then the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Id.* (citation omitted).

As detailed in the preceding paragraphs, the Court has dismissed all claims over which it would have original jurisdiction. The only remaining claims in this action are Plaintiffs' state law contract claims, over which the Court does not have original jurisdiction. Plaintiffs have not provided any extraordinary or compelling circumstances for this Court to exercise supplemental jurisdiction over state claims. Accordingly, the Court declines to exercise jurisdiction over Count Nine, Count Ten, and Count Eleven. *See Hedges*, 204 F.3d at 122-23 (upholding district court's refusal to exercise supplemental jurisdiction over state law claims after dismissing plaintiff's Section 1983 claims); *Wall v. Dauphin County*, 167 F. App'x 309, 313 (3d Cir. 2006) (declining to hear state claims for lack of jurisdiction after dismissing plaintiff's Section 1983 and Section 1985 claims); *McLemore*, 2007 U.S. Dist. LEXIS 52355, at *19 (declining to exercise supplemental jurisdiction over state law claims after determining plaintiff's Section 1983 claim was meritless).

Finally, because the only remaining claims in the Complaint are state law contract claims, the Court will remand this case to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final

33

judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Bromwell v. Mich. Mut. Ins. Co.*, 115 F.3d 208, 213 (3d Cir. 1997) (concluding that "the plain language of [Section 1447(c)] mandates that the matter be remanded to the state court from which it was removed"); *A.P.*, 2017 U.S. Dist. LEXIS 164371, at *22-23 (remanding state law claims to state court after dismissing all federal claims in the complaint).

Accordingly, the Court will remand the remaining state law contract claims to state court.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** the Special Counsel's motion to dismiss Count Sixteen of the Complaint and Morristown Development's motion to dismiss Counts Six, Ten, and Fourteen, and the Town Defendants' motion to dismiss Counts One through Sixteen.  The Court **REMANDS** Counts Nine, Ten, and Eleven to state court.   An appropriate Order accompanies this Opinion.

Dated: February 24, 2023

Evelyn Padin, U.S.D.J.